Good morning. It's nice to see everybody here in person, even though those not speaking will be masked. Our first argument for today is in the case of United States v. Richard Abbott, No. 21-2506. We'll hear first from Mr. Hillis. Daniel Hillis Good morning. May it please the Court, my name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Abbott. Mr. Abbott raises a single issue on appeal, and that is whether the District Court erred in allowing him to represent himself. In our view, the answer is yes, because there's a defective phoreticology as demonstrated through the transcript pages cited throughout our brief. So as part of the Sixth Amendment right to counsel, you also have the right to proceed pro se, and before allowing somebody to do that, District Courts are charged with conducting an appropriate colloquy to ensure that a person is making a knowing and voluntary waiver of the right to counsel. And the defects in this case show that there was not a knowing and voluntary waiver, because Mr. Abbott was not advised, and there were no inquiries about important things such as his mental health, whether he was under the influence of drugs or alcohol, his age, his education level, his knowledge of available defenses. Judge Goldberg Does he contend he was under the influence of drugs or alcohol? Daniel Hillis Well, he was not fully under the influence of drugs that he should be under the influence of, Judge Hamilton. So, Mertz, Moratz? Judge Goldberg Let's take it one at a time. Does he contend he was under the influence of alcohol? Daniel Hillis We don't have a record of that, Judge, so I don't know the difference. Judge Goldberg Does he contend he was under the influence of illegal drugs? Daniel Hillis There was no inquiry about that, so it's silent, and that's what we think the problem is, though, Judge Hamilton. Judge Goldberg He does not contend, however, that he was. Daniel Hillis Well, I can't put the information into the record at this point, so it's incumbent on the district court to have the colloquy to establish that he wasn't. That's our position. Judge Goldberg Mr. Hillis Daniel Hillis So, Ducton supports that, incidentally. Judge Goldberg But he doesn't say here, at least I didn't see anything that says he wants to withdraw his guilty plea or anything along those lines,  didn't see anything that says he wants to withdraw his guilty plea or anything along or always cases dismissed with prejudice we say, what would you say if you had a chance to replete the case? And I think the question here is, what would he say if he went back down to the district court? I was under the influence of illegal drugs, or I wouldn't have pled guilty, or this was my defense at trial that I was unaware of? There doesn't seem to be any of that. Judge Goldberg I'm not aware of any cases that analogize to 12B6, so I understand that. I know that. Judge Goldberg And, of course, the type of error here is not amenable to a harmless error contention, and if the record were able to be supplemented, I would supplement it. But under Rule 10, I cannot offer information to try to tilt this court's consideration of facts that weren't available to the district court. So I'm a little bit in a hole here if you're saying that we should have done those things. I don't see how we could. Judge Goldberg Well, let me ask the question a little bit differently. Does the guilty plea have any effect on this at all? I mean, he waives his   I mean, he waives his right to comment, but does the guilty plea have any effect on this conducts a hearing, and then he ultimately pleads guilty. Does that have any effect on the colloquy or his Sixth Amendment rights at that point? Judge Goldberg It does, because if he isn't representing himself, rather shouldn't be representing himself, then his ability to enter the guilty plea even would be a problem. So far as withdrawing the plea, we cannot. Judge Goldberg But why? He stood in front of the court and said, I'm guilty. I did this. Judge Goldberg His competence would be a very important factor in whether that's a legitimate thing for him to do or not for me.     Judge Goldberg He's not. Judge Goldberg He's not. Judge Goldberg He's not. Judge Goldberg He's not guilty that he didn't commit the crime. Judge Goldberg I'm saying that the proceedings are defective because we don't have an adequate record of his competency, rather his knowing and valid waiver of his right to represent himself. And so far as withdrawing his guilty plea, as the Court is aware, there are only three circumstances that allow somebody to do that. They're extremely difficult, right? Actual, in a sense, legal, in a sense, and invalidity. So here, this would be invalidity, but like the Ninth Circuit has pointed out in Erskine, if a person doesn't know what his rights are, it's hard to charge that person with knowledge   that he didn't commit the crime? Judge Goldberg I'm saying that the proceedings are defective because we don't have an adequate record of his competency, rather his knowing and valid waiver of his right to represent himself. And so far as withdrawing his guilty plea, as the Court is aware, there are only three circumstances that allow somebody to do that.  So here, this would be invalidity, but like the Ninth Circuit has pointed out in Erskine, if a person doesn't know what his rights are, it's hard to charge that person with knowledge that he didn't commit the crime? Judge Goldberg I'm saying that the proceedings are defective because we don't have an adequate record of his rights, rather his knowing and valid waiver of his right to represent himself? Judge Goldberg I'm saying that the proceedings are defective because we don't have an adequate record of his rights, rather his knowing and valid waiver of his right to represent himself? Judge Goldberg If he doesn't have his right, but you do as a reviewing court want to make sure that boxes are checked. And so we're not looking for district courts to influence somebody out of a position that they legitimately want to take, but it is necessary for a district court judge to make sure that we touch upon the things that are informative of the knowing and valid right, excuse me, the waiver of the knowing and valid right that otherwise exists. That's the problem. Judge Goodrick Could you give me an example of the particular defense to the charges that the judge should, I mean boy, oh boy, and this is a very slippery subject, defenses of the charges, familiarity with criminal trial procedure. Does he have, okay, rule one, let's start with rule one. Rule two, what would have satisfied you in this case? You complained about his age, but he says his age. He says he's 36 years old at a different hearing. Judge Goldberg That's the problem. Judge Goodrick But, well, wait a minute. I mean, this colloquy would go on for days. Judge Goldberg No, it would be very short. Judge Goldberg What defenses, so the judge, by the way, you know this in a criminal case, the judge gets the indictment, and oftentimes that's it. How would the judge possibly know what potential defenses he has to a particular crime to advise the defendant? Judge Kersh It doesn't have to advise, it needs to ask whether it's been considered. I don't have access to the discovery materials, Judge Kersh, so I have relatively less information than trial counsel. The people who did have access to it and could have made a fulsome record of it were the people who appeared in the I mean, if we're talking about a case that has two cases that are under control, then the judge has pretty much to ask that important question. It wasn't done here, and Van Moltie, Hanson, the cases that we cited, the Supreme Court at least cited its plurality opinion, of course, but the Hanson case, Van, which is also a 10th Circuit case, so those two 10th Circuit cases say these are things that we should do. Pepper say the things we pointed out in the brief are things that we should do. So they don't all come from the bench book. Some of them come from 7th Circuit case law, some come from other courts. It seems to me that other courts are maybe more protective of this important right before there's a court circuit, 10th Circuit, or asking that certain things be done. I don't think that it's very much to say that that's a significant view of other courts, and it should be something that we do here. I'm concerned that we do things in a bit of a truncated fashion with four factors that we look to predominantly in the 7th Circuit. Judge Okwumi, I'm sorry. The government suggests that we should look to his filings, both before and after he became a pro se, and that those demonstrated his competency and his ability to represent himself. To what extent should the court investigate the merits of the arguments that Mr. Abbott raised throughout the proceedings? Well, you thought they were meritorious in your recollection of them, or if another judge did, I think it would be something to speak about. But I did not see much in there to tell me that this is a gentleman who had a lot of understanding of legal issues. That would make me actually concerned to read his pleadings to see how they inform the court's analysis to say that this is something that is indicative of a person who understands the law well. So I don't think that it carries much weight for the government. I would say instead it carries weight for the defense on that position to demonstrate a lack of knowledge and experience in that he is acting in his peril. And Judge Kirsch, just to touch back on what you were saying, I looked to the concurrence in Hussain by Judge Gorsuch on this important point, and that was where he said that we as judges should not disregard what citizens know to be true. And so in proceedings that span over a long period of time, in inquiries that aren't made, to say that a judge is aware of age or competency or experience and all of those things that are in disjointed, fragmented portions of hearings that proceed, and I think there are four of them altogether, and to say the judge must have known that. We know that judges are busy by volume, the cases they handle. There's a judge here today who was a district court judge. I don't know that we can ask the best of judges to remember all the important details. I could tell you that when I had a defendant who wanted to represent himself, those were few and far enough between that I was focused. I believe it. And so you would make a good record that demonstrate that. But not necessarily all at one hearing. For the phoreticology, I think that would be better practice. Do you agree, however, that the law, the precedents say we look at the entire record? It does, but I think that's to engage in a bit of a legal fiction, to be polite. Mr. Hillis, I used to do these plea hearings from both sides a lot, and the judge asks a lot of questions during a plea hearing, and oftentimes the questions are fast, and the judge has to determine whether or not the defendant knows he's entering into a no-involuntary plea. Here, it seems to me that what you're asking is that the judge, if we just take the bland question, are you familiar with your trial defenses? Are you familiar with your rights of criminal procedure? I don't know that that would accomplish anything at all unless the judge went through those defenses or went through those potential rights of pretrial procedure or trial procedure with the defendant. Like it'd be weird at a plea hearing if the judge says, are you aware of your trial rights? Yes. That's not what judges do. You have a right to cross-examine witnesses. You have the right to testify. They go through all of these rights. That's what makes it important. But here, boy, I just had a case last week where we had the opposite side of this coin where a defendant wanted to represent himself and the judge said no. So it would be a fine line, Judge. The point is you have to check the box. You have to make the inquiries, and we would welcome you back to the defense bar if you would like a full, more involved colloquy with defendants and insist upon that. I can't do that, but this court can say, if there's a list, make sure you follow it. And that's what we're saying wasn't done here. That's why we identified the defendants. Thank you, Mr. Hillis. You'll have, we've used up a lot of your time. You'll have an opportunity for rebuttal. Thank you. Appreciate it. Ms. Tableson for the United States. Good morning, Your Honors. May it please the Court, Rebecca Tableson on behalf of the United States. A criminal defendant has a constitutional right to represent himself. Richard Abbott exercised that right, and he did so with his eyes open. Dissatisfied with the work of three separate defense attorneys, Mr. Abbott strategically chose to proceed pro se. I want to proceed pro se, period. I'm 34 years of age, he said. Let's get to it. Let's get to it. I have a right to do it, he said. Mr. Abbott's right to make that choice was not lessened by the fact that he lacks formal legal training or has suffered from anxiety. And the district court granted Mr. Abbott's request only after multiple hearings, including a formal FARETA hearing that tracked precisely the bench book and this court's cases. Let me ask you, since you referenced his mental health, given his mental health issues and the recent medication changes that he talked about, shouldn't the district court have checked one last time at the FARETA hearings to see if his mental health issues or his medication changes interfered with his ability to remember the warnings that the district court had given him, in some cases, months before, since these hearings spanned the course of several months? I think nothing in this court's case law or the Supreme Court's case law specifically required that inquiry to be repeated in the January 2021 FARETA colloquy. And there's a passage in this court's decision in United never disclosed issues that were, like medication issues that were interfering with his ability to conduct his own defense. And throughout the course of the proceedings, he appeared lucid, competent, and mounted a vigorous defense on his own behalf. And that, this court found persuasive in rejecting it to the contention that there should have been a further inquiry into his mental health as part of the FARETA process. In circumstances like these, Your Court's aware of the risks of self-representation could arguably have been a constitutional error under FARETA. Indeed, this would be a much harder appeal if the judge had found, as Mr. Abbott now argues, that the waiver of counsel was invalid. But the district court avoided that error here by following a textbook procedure. The record in this case reflects that Mr. Abbott's waiver was voluntary, intelligent, and unequivocal. He effectively asked you today to do what this court and the Supreme Court have repeatedly refused to do, which is to articulate a script of questions that must always be asked at every FARETA colloquy. I think the phrase used today was boxes being checked. For example, how old are you? Even though at the previous hearing, Mr. Abbott disclosed that he was 34, he remained 34 at the FARETA colloquy. There are certainly contexts in which those questions might be relevant during the formal FARETA colloquy. For example, if a defendant appears in court and is quite old or quite young, further inquiry into a specific age might well be relevant under this court's case law. Or if the defendant proposes to make a purely legal defense, arguing that something is an element of the offense that the government says it's not, that is a defense that would really benefit from the expertise of counsel. And in that context, the district court judge might engage in a more fulsome colloquy about the potential defenses the defendant plans to raise and how those could be affected by counsel. But the fact is that none of those considerations are found here. Instead, it is impossible to read this record and come away with anything but the conclusion that Mr. Abbott knowingly, unequivocally, and intelligently waived counsel. Let me ask you the same question I asked Mr. Hillis. One of the considerations that you suggest is that they shed some light on his competence and his ability to represent himself. But to what extent should we really look at the quality or the merits of what he filed in front of the court? Well, two answers, Your Honor. First, as to this case in particular. I think Mr. Abbott's filings reflect, first they substantiate his claim to the district court that he had been studying the law during his time in pretrial incarceration because he did repeatedly file documents that referenced the appropriate sources of law. For example, a motion for release pending trial, citing and relying on the Bail Reform Act. A motion for the disclosure of grand jury transcripts, citing and relying on Federal Rule of Criminal Procedure 6E. Second, they corroborate the district court's conclusion that Mr. Abbott understood what was going on, was able to communicate his preferences, and was doing so unequivocally. But the second part of Your Honor's question is a sort of more legal question about how effective of an advocate does a defendant have to be in order to represent himself. And Ferretta rejected, I think the phrase used in Ferretta is a sort of paternalistic understanding of the Sixth Amendment, under which we would scrutinize the merits of the pro se defendant's filings and arguments as part of the process of permitting him to represent himself, even if the arguments he's making are not ultimately meritorious. If the court has no further questions, we would respectfully ask to affirm the decision below. Thank you. Thank you, Ms. Tableson. Mr. Hillis, any rebuttal? Briefly. So far as the pleadings go, Judge Cume, we shouldn't put a mask on. For the tape recorders. Thanks, Judge. I forgot all about it. So Outland cautions about appellate courts making factual determinations for the first time on appeal. I know it's in a different context there. It was under the influence of drugs and alcohol and the effect that had on the person's ability to make statements. But we'd be making factual determinations for the first time on appeal, since the district court didn't consider those pleadings and ferreting out whether or not this was a knowing and voluntary waiver. The influence of drugs and alcohol, Judge Hamilton, circle back to that. It is not for district courts to avoid asking important questions. That is a routine question that's often asked by district courts, even though there is no indication if a person is not on drugs and alcohol. The importance of asking the question is to get the information. The government says this is textbook, but I don't know what textbook this is in. So we've pointed to bits of the bench book, which is sort of a compendium of what precedent and practices of district courts the AO compiles. And we find defects here throughout. And lastly, a Seuss-like statement by my client, let's get to it. Let's go to it. I have a right to do it. He doesn't. I mean, he has to demonstrate that he has the ability to do this before we afford him the right to waive and represent himself. His ability? He doesn't have to show he's good at it. Not good, but a knowing and voluntary decision, Judge. But it's his agency. That's right. Fully informed in a record of these things. And that's what we're missing here. So for these reasons, we ask that you vacate. Thank you. Our thanks to both counsel. The case will be taken under advisement.